IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

| | |
|---|---|
| APPLICATION OF THE UNITED STATES OF AMERICA FOR AN AUTHORIZATION FOR THE DISCLOSURE OF PROSPECTIVE GPS/E911 LOCATION DATA RELATING TO THE SUBJECT TELEPHONE 412-733-6810, FROM METROPCS | Magistrate No. 15-908M<br><br>[SEALED] |

AFFIDAVIT FOR DISCLOSURE OF PROSPECTIVE E911/GPS
LOCATION DATA RELATING TO A WIRELESS TELEPHONE

I, Karen L. Springmeyer, being duly sworn, depose and say:

1. I am a Special Agent with the Federal Bureau of Investigation and, acting as such am a "federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. For the reasons and to the extent detailed below, this affidavit seeks:

   a. A warrant pursuant to 28 U.S.C. § 1651(a), Fed. R. Crim. P. 41 and 57(b), and 18 U.S.C.§ 2703 (c)(1)(A), authorizing the disclosure of records of physical location data, as described more fully below in Attachments A and B, generated at any time up to 45 days from the date of the proposed warrant, at such intervals and times as the government may request, that will establish the approximate position of the following

1

wireless telephones issued by **MetroPCS**: assigned telephone number **(412) 733-6810**, subscribed to Unknown.

   b. Authorization under 18 U.S.C. § 3103a to the extent applicable, for good cause shown, not to reveal the above warrant order of disclosure until 30 days after acquisition of the last court-authorized disclosures (unless extended for good cause shown by an updated showing of the need for further delay);

   c. A direction accompanying the proposed warrant of authorization that directs **METROPCS**, its agents and representatives not to disclose the existence of that warrant or its execution or the underlying investigation until further notice.

   2. Your Affiant's application and the grounds for her application relate to an ongoing investigation of Clinton ROBINSON JR., Dionne PETTUS, Kelvin FERGUSON, and others, known and unknown for their involvement in the Clinton ROBINSON Drug Trafficking Organization (herein referred to as the "Robinson DTO"), a heroin trafficking organization in Allegheny County, Pennsylvania. Based on the information submitted below, probable cause exists to believe that the requested location-based information will lead to evidence of offenses involving violations of Title 21, United States Code, Section 841(a)(1), that is, possession with intent to distribute a controlled substance (heroin); Title 21, United States Code, Section

2

843(b), that is, unlawful use of a telephone to facilitate the distribution of heroin; and Title 21, United States Code, Section 846, that is, conspiracy to distribute or possess with the intent to distribute heroin (the "TARGET OFFENSES"), as well as the identification of individuals who are engaged in the commission of these offences.

3. For the reasons set out in this affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, or will continue to be committed by Dionne PETTUS (user of the TARGET TELEPHONE), and others, known and unknown.

4. I have been advised that **METROPCS**, which services the TARGET TELEPHONE, has the technical means promptly to generate and record physical location data with respect to a specified wireless telephone by measuring its position relative to other known reference points. This data is the product of techniques that this service provider developed to comply with a federal mandate to supply emergency responders with enhanced 911 ("E-911") service. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. The wireless industry has adopted

standards for the precision with which such techniques are expected to locate a wireless telephone.

5. When directed pursuant to warrant, **METROPCS** will provide a designated law enforcement agency with periodically-updated physical location data with respect to the TARGET TELEPHONE. In order to acquire each update, the TARGET TELEPHONE must be powered on and the service provider may send a signal to the TARGET TELEPHONE that results in it transmitting a response to the provider's network. Where, as here, physical location data is to be generated at the request of law enforcement request, the carrier may send its triggering signal to the TARGET TELEPHONE unobtrusively, without alerting the user of that device.

6. I submit that the following establishes probable cause to believe that a crime has been committed, that Dionne PETTUS, user of the TARGET TELEPHONE, along with others, known and unknown, committed that crime, and that the information likely to be received concerning the location of the TARGET TELEPHONE used by PETTUS will constitute evidence of that crime.

## CONFIDENTIAL SOURCE INFORMATION

7. Confidential Source #1 ("CS1") has been cooperating with law enforcement officers for several years, and is currently motivated by the potential to receive monetary compensation. CS1 has criminal convictions for drug crimes. CS1 is familiar with Clinton ROBINSON, Dionne PETTUS, and other

members of the Robinson DTO. CS1 has provided historical and current information on ROBINSON, PETTUS, and their co-conspirators. CS1 has direct and indirect access to the cellular telephone numbers used by members of the DTO, as these members and associates have consistently provided CS1 with those numbers in the past.

8. Your affiant believes that CS1 has provided credible information for the following reasons:

9. The information provided by CS1 has been corroborated by independent investigations conducted by the FBI, and the Pittsburgh Bureau of Police. Some of the information provided by CS1 has also been corroborated independently by CS2[1].

10. CS1 has provided detailed information about drug traffickers (including PETTUS and other traffickers unrelated to this investigation), including quantities and methods of distribution, which was thereafter confirmed to be true by first-hand observations of law enforcement officers and the seizures of drugs and related proceeds. Accordingly, your affiant has reason to believe that the information provided by CS1 is credible.

---

[1] CS2 is noted in this affidavit for the purpose of indicating that investigators have a second source, independent of CS1, which corroborates some of the information provided by CS1.

5

11. Information provided by CS1, along with details of a controlled purchase conducted by CS1, is provided later in the affidavit.

## BACKGROUND INVESTIGATION

12. In early January, 2015, the Pittsburgh Bureau of Police Narcotics Unit began receiving complaints of narcotic activity on Watson Blvd. in the Perry North neighborhood of Pittsburgh. These complaints specified two addresses on Watson Blvd., one being 132 Watson Blvd.

13. Narcotics Detectives focused their efforts on this area, and discovered that the subjects around this residence were extremely surveillance conscious, and even approached police surveillance vehicles while the detectives were present inside. Due to this, detectives installed a pole camera to assist with surveillance of Watson Blvd.

14. Detectives identified numerous individuals involved in the narcotics activity as being known members or associates of the "Wilson Avenue Gangsters" (a neighborhood gang). Detectives also noted that many of the subjects are utilizing expensive vehicles, often registered in the names of associates and/or relatives.

15. Several independent sources, including CS1 and CS2, stated that 132 Watson Blvd. was being used as a heroin point of

distribution and also was used to store heroin, money, and guns for the gang.

16. CS1 stated that Clinton ROBINSON, aka "Gank", was the person supplying the subjects at 132 Watson Blvd. Detectives corroborated this information with surveillance, as ROBINSON was seen numerous times at the residence; following his visits, the activity level at the residence (number of subjects in and out of the residence for very short periods of time) increased substantially, indicating that ROBINSON had supplied the subjects with heroin.

17. CS1 stated that in addition to the subjects on Watson Blvd., ROBINSON is supplying Dionne PETTUS and other dealers around Osgood Street and Maple Street with heroin.

### CONTROLLED PURCHASE OF HEROIN - DIONNE PETTUS

18. As stated above, CS1 is familiar Dionne PETTUS, a member of the Robinson DTO. PETTUS sells heroin to other distributors in the north side of Pittsburgh, and will use prepaid cellular telephones to facilitate these transactions. CS1 has access to the telephone numbers used by PETTUS, and recently obtained the TARGET TELEPHONE number from PETTUS.

19. During October of 2015, CS1 conducted a controlled purchase[2] of heroin from PETTUS, which was facilitated over the TARGET TELEPHONE[3].

20. Prior to the controlled purchase, CS1 spoke with PETTUS in person and advised PETTUS that he/she wanted to purchase a certain quantity of heroin; PETTUS advised CS1 of the price of this heroin.

21. CS1 later sent a text message to the TARGET TELEPHONE which asked if CS1 could see PETTUS after a certain time that day[4]; CS1 received a text message response from the TARGET TELEPHONE which stated "Yes". Your affiant viewed both the sent and received text messages on CS1's telephone, and verified that they involved the TARGET TELEPHONE.

22. Following this text message, CS1 received a telephone call from the TARGET TELEPHONE; during this call, PETTUS (voice identified by CS1) instructed CS1 as to where and when they

---

[2] A controlled purchase is where the CS and any vehicle used are searched to eliminate any possible contraband, and then the CS is provided with official funds to purchase the narcotics. After the purchase, the CS turns over any narcotics purchased and is searched again to eliminate any improper actions by the CS.

[3] Due to the violent nature of this trafficking organization, the phone calls were not recorded; however, they were conducted under the supervision of members of the the FBI Greater Pittsburgh Safe Streets Task Force (GPSSTF) who verified the number dialed, and listened to CS1's side of the conversation with PETTUS. Additionally, CS1 wore a transmitter during the controlled purchase and Agents were able to hear both CS1 and PETTUS's side of any conversation occurring during this transaction.

[4] Due to the violent nature of this DTO, and in order to protect the identity of CS1, the exact message sent by CS1 is not included in this affidavit, however, as stated; your affiant viewed the sent message, which is paraphrased above.

would meet to conduct the aforementioned purchase of heroin. Your affiant overheard CS1's portion of this telephone conversation, and verified that the incoming call was from the TARGET TELEPHONE.

23. Investigators set up surveillance at the location advised by PETTUS prior to the controlled purchase. While on surveillance, investigators witnessed PETTUS arrive at the location driving a gold in color Buick sedan[5]. Investigators then overheard, via the transmitter, CS1 and PETTUS discuss the price of the heroin and the quantity that was to be exchanged.

24. Following the meeting, investigators met with CS1 and obtained the quantity of heroin[6] purchased from PETTUS. Furthermore, while still with investigators, CS1 received a call from the TARGET TELEPHONE, in which PETTUS (voice identified by CS1) made a statement to CS1 regarding the money exchanged during the transaction[7].

25. For all these reasons, law enforcement has probable cause to believe that the TARGET TELEPHONE is under the domain of, and is being used by, Dionne PETTUS.

---

[5] PETTUS has a 2001 Buick sedan, gold in color, PA Tag JYF-6394, registered in his name.
[6] The heroin was field tested by your affiant and another officer of the GPSSTF, and was positive for the presence of heroin.
[7] Due to the violent nature of this DTO, and in order to protect the identity of CS1, the exact words stated by PETTUS are not included in this affidavit. However, your affiant and other investigators of the GPSSTF overheard the entirety of the conversation between both PETTUS and CS1, which was in reference to the recently completed heroin transaction. PETTUS's statement is paraphrased above.

9

26. Accordingly, the prospective GPS physical location data requested in this application, as related to the TARGET TELEPHONE, will allow the FBI to: 1) help to identify the associates of Dionne PETTUS 2) link Dionne PETTUS to residences and drug stash house locations, 3) link Dionne PETTUS to his co-conspirators, such as local and/or out-of-state suppliers, and 4) allow law enforcement to determine when and where PETTUS engages in future heroin transactions.  In sum, this order will provide law enforcement with evidence of Dionne PETTUS's drug trafficking, which as stated throughout there is probable cause to believe he conducts in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

27.   Pursuant to 18 U.S.C. § 2705 (b), to the extent applicable, the government seeks a directive to **METROPCS** not to disclose the government's acquisition of  physical location data until further notice. Pursuant to 18 U.S.C. § 3103a, the government seeks authorization to delay our notification to CHEADLE until 30 days after acquisition of the last disclosures authorized by the Court's order (unless extended for good cause shown by an updated showing of the need for further delay). The grounds for this request are as follows: Dionne PETTUS and others are believed to be engaged in the distribution of heroin and are currently part of an ongoing investigation.  Alerting

Dionne PETTUS to the existence of this Order would likely result in him discarding his telephone and prevent the continued identification of co-conspirators in this drug trafficking activity.

28. WHEREFORE, your affiant respectfully requests that the Court issue an order in the form annexed that:   Pursuant to 28 U.S.C. § 1651(a), Fed. R. Crim. P. 41 and 57(b), and 18 U.S.C.§ 2703 (c)(1)(A), directs **METROPCS** to disclose the requested physical location data with respect to the TARGET TELEPHONE to the FBI, to be generated at any time up to 45 days from the date of the proposed order, at such intervals and times furnishing all information, facilities, and technical assistance necessary to accomplish said disclosure unobtrusively;

29.   Pursuant to the same authority, authorizes execution of the warrant at any time of day or night, due to the potential need to locate the TARGET TELEPHONE outside of daytime hours;

30.   Pursuant to 18 U.S.C. § 2706 and the All Writs Act, 28 U.S.C. § 1651(a), directs that **METROPCS** be paid compensation by FBI for reasonable expenses directly incurred in providing the facilities and assistance described above;

31.   Pursuant to 18 U.S.C. § 3103a, authorizes the government to delay notice to Dionne PETTUS to the extent requested herein; and

32. Pursuant to 18 U.S.C. § 2705 (b) and the All Writ Act, 28 U.S.C. § 1651(a), directs **METROPCS**, its agents and representatives not to disclose the existence of the proposed warrant, its execution or the underlying investigation until further notice.

33. Because this investigation is ongoing, it is further respectfully requested that this application and any warrant issued thereon be ordered sealed until further notice.

Karen L. Springmeyer
Special Agent FBI

Subscribed and sworn to before me
this 30th day of October, 2015.

HONORABLE CYNTHIA REED EDDY
United States Magistrate Judge

ATTACHMENT A

Property to Be Searched

The cellular telephone assigned call number **(412) 733-6810**, (the "TARGET TELEPHONE"), whose wireless service provider is **METROPCS**. Information about the location of the TARGET TELEPHONE that is within the possession, custody, or control of **METROPCS**. This court has authority to issue this warrant under 18 U.S.C. §§2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

ATTACHMENT B

Particular Things to be Seized

All information about the location of the TARGET TELEPHONE described in Attachment A for a period of 45 days, during all times of the day and night. "Information about the location of the TARGET TELEPHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information for the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **METROPCS**, is required to disclose the Location Information to the government at such intervals and times as directed by the FBI. In addition, **METROPCS** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **METROPCS's** services, including by initiating a signal to determine the location of the TARGET TELEPHONE on **METROPCS's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **METROPCS** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).

**METROPCS**, its representatives, agents and employees, unless and until otherwise ordered by the Court, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of this order or the generation of or production to law enforcement of the location information required herein, except **METROPCS** may disclose the attached warrant to an attorney for **METROPCS** for the purpose of receiving legal advice.